UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV- 3:23-cv-462-CHB

ABIRA MEDICAL LABORATORIES, LLC                                    PLAINTIFF
d/b/a GENESIS DIAGNOSTICS

v.                        **COMPLAINT AND DEMAND FOR JURY TRIAL**

HUMANA, INC., AND ITS AFFILIATES,
ABC COMPANIES 1-100 AND JOHN DOES 1-100                            DEFENDANTS

    Serve:
    Registered Agent
    CT Corporation System
    306 W. Main St., Ste. 512
    Frankfort, KY  40601

Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics ("Genesis" or "Plaintiff"), by and through counsel, states as follows for its Complaint against Defendants Humana Inc., and its Affiliates, ABC Companies 1-100 and John Does 1-100 ("Humana" or "Defendants"):

## Nature of the Action

1.     Genesis' claims arise from Defendants' intentional, unlawful, and long-standing refusal to properly pay Genesis millions of dollars for services Genesis rendered to Defendants' subscribers over an extended period.

2.     Pursuant to applicable law, Genesis was, among other things, entitled to have its claims for services rendered to Defendants' subscribers and/or members processed and paid promptly. Instead, Defendants regularly refused to pay and/or underpaid claims properly submitted by Genesis -- *including without limitation claims for COVID-19 testing Genesis*

*performed for Defendants' enrollees* -- or simply failed to respond in any way to claims submitted by Genesis, all in violation of applicable state and federal law.

3. Indeed, as set forth more fully below, in many of the instances where Defendants did deign to respond, Defendants offered spurious explanations -- obviously created from whole cloth -- to provide pretextual grounds designed to permit Defendants to either avoid paying altogether, or to substantially underpay, legitimate Genesis claims.

4. More specifically, Defendants have improperly refused to pay (or underpaid) Genesis millions of dollars for services it rendered to thousands of Defendants' subscribers and/or members for numerous pretextual reasons, including purported: (i) lack of adequate claim information provided by Genesis; (ii) untimely filing of claims; (iii) lack of coverage by the subscribers/members for the services provided; and (iv) failure to meet conditions of coverage. For the claims at issue in this arbitration, these purported bases for denial of coverage were entirely groundless and have deprived Genesis of millions of dollars to which it is rightfully entitled.

5. As a result of Defendants' refusal and failure to abide by its obligations, as well as its duties of good faith and fair dealing owed to Genesis, Genesis was compelled to bring this arbitration for the substantial damages it incurred arising out of the same.[1]

## Parties

6. Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics, is a limited liability company organized under the laws of the State of New Jersey, with its principal place of

---

[1] The unpaid and underpaid claims presently at issue in this arbitration are enumerated in a spreadsheet annexed hereto as Exhibit A. Plaintiff reserves the right to amend this spreadsheet as necessary.

business located at 957 Route 33, Hamilton Square, NJ 08690. At all relevant times, Plaintiff was an out-of-network provider of laboratory services to Defendants' subscribers/members.

7. Defendant Humana Inc. is a global health services organization licensed to do business in all fifty (50) states, which has its principal place of business at 500 West Main Street, Louisville, KY 40202.

8. Plaintiff is unaware of the true names and capacities of Defendants named herein as ABC Companies 1 through 100, and JOHN DOES 1 through 100, inclusive, and therefore asserts claims against these Defendants by such fictitious names. Plaintiff will amend this Complaint to show the true names and capacities of such ABC Companies and JOHN DOES when the same have been ascertained. Plaintiff, on information and belief, alleges that each of the fictitiously named Defendants is responsible in some manner for the actions and occurrences herein alleged, and that Plaintiff's damages were proximately caused by their acts. On further information and belief, Plaintiff alleges that at all times herein mentioned, the ABC Companies and JOHN DOE Defendants acted in concert with, and were/was the agent, employee, contractor, partner, servant, employee and/or representative, with the permission and consent of the other Defendants.

## Jurisdiction

9. This Court has subject matter jurisdictional over this action pursuant to 28 U.S.C. § 1332 (diversity). Additionally, this Court has supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

10. The amount of damages at issue exceeds $75,000.00, exclusive of interest and costs.

11. This Court has personal jurisdiction over the Defendants because they maintain their principal places of business within this District.

12. Venue in this district is proper pursuant to 28 U.S.C. § 1391 as Defendants are residents within this District.

## Factual Background

### Defendants Fail to Pay Genesis for Services Rendered During 2017-2021

13. As Plaintiff has come to learn, Defendants -- over a period of several years -- blatantly disregarded, among other of their duties, Defendants' express payment obligations to Plaintiff.

14. Indeed, it has become apparent that Defendants engaged in a years-long campaign designed to deprive Plaintiff of millions of dollars it is rightfully owed for services Plaintiff rendered to Defendants' subscribers/members. To advance this campaign, Defendants repeatedly either *failed to respond at all to properly submitted claims* or manufactured from whole cloth some other bases to improperly refuse to make payment to Plaintiff.

15. By way of example only and without limitation, Defendants used the following contrived and meritless reasons for refusing and neglecting to properly process a myriad of Plaintiff's claims for payment: (i) lack of adequate claim information provided by Genesis; (ii) untimely filing of claims; and (iii) lack of coverage by the subscriber/member for the services provided.

16. Defendants' refusal to properly process and pay Genesis for the services it rendered to Defendants' subscribers/members on these bases was entirely groundless, has deprived Genesis of millions of dollars to which it is rightfully entitled, and constitutes a material breach of Defendants' payment obligations.

**Defendants Breached their Obligation to Reimburse Plaintiff
for COVID-19 Testing Under the FFRCA and CARES Act**

17. Congress took special and extraordinary steps during the pandemic to require health plans and health insurance issuers like Defendants to cover and pay the cost of coronavirus testing as a mechanism to fight the pandemic. As part of these efforts, Congress prohibited health plans and health insurance issuers from imposing any prior authorization or other medical management requirements on testing for the diagnosis of COVID-19. *See* FFCRA § 6001(a). Defendants' conduct is the antithesis of what Congress intended for health plans to do to combat COVID.

18. In addition to failing to pay and/or underpaying Plaintiff for a myriad of other of its laboratory services, Defendants have failed to pay/underpaid Plaintiff for COVID-19 diagnostic testing that Plaintiff provided and continues to provide to Defendants' subscribers and/or members. Instead, in blatant violation of the FFRCA and CARES Act, Defendants acted in bad faith by erecting hurdles to payment without justification and/or for immaterial reasons unrelated to the medical necessity of the testing.

19. Aside from its clear and unambiguous obligation to properly pay Plaintiff for, among other of its services (as described above), COVID-19 testing, under the provisions of the FFRCA and CARES Act, Plaintiff had every expectation that Defendants would honor their obligations and properly reimburse Plaintiff for the COVID-19 testing services it provided to Defendants' subscribers and/or members. Plaintiff has been and continues to be harmed by, among other things, Defendants' failure to pay and/or underpayment of valid COVID-19 testing claims that Plaintiff submitted to Defendants for reimbursement for services to Defendants' subscribers/members.

20. From the start of the COVID-19 pandemic, Plaintiff has offered COVID-19 diagnostic testing for the detection of the virus that causes COVID-19. Plaintiff began offering

and focusing its resources on COVID-19 testing services as part of its commitment to combatting the COVID-19 pandemic.

21. The testing services were medically necessary and appropriate according to recognized medical standards and standards announced by Congress and the Department of Health and Human Services.

22. Congress has clarified that group health plans and health insurance issuers like Defendants must cover and reimburse COVID-19 testing and related services. Such rules have been laid out not just in the text of the FFCRA and CARES Act, but also in a series of "Frequently Asked Questions" ("FAQs") documents issued and publicly posted by the federal Department of Health and Human Services ("HHS"). Defendants' failure to properly reimburse Genesis for COVID-19 testing services violates these unequivocal reimbursement rules, as explained in detail below.

23. Under Section 6001 of the FFCRA, as amended by Section 3201 of the CARES Act, Defendants must provide benefits for certain COVID-19-related items and services, including COVID-19 testing, furnished beginning March 18, 2020. Defendants "must provide this coverage without imposing any cost-sharing requirements (including deductibles, copayments, and coinsurance), prior authorization, or other medical management requirements." *See* FFCRA, § 6001(a); FAQs About Families First Coronavirus Response Act and Coronavirus Aid, Relief, and Economic Security Act Implementation (hereinafter "FAQs"), Part 44, pp. 1-2 (February 26, 2021).

24. Moreover, the FAQs clarify that plans and issuers are prohibited from imposing specific screening criteria on coverage of COVID-19 diagnostic testing for an asymptomatic person who has no known or suspected exposure to COVID-19. Thus, "[w]hen an individual seeks

and receives a COVID-19 diagnostic test from a licensed or authorized health care provider, or when a licensed or authorized health care provider refers an individual for a COVID-19 diagnostic test, plans and issuers generally must assume that the receipt of the test reflects an 'individualized clinical assessment', and the test should be covered without cost sharing, prior authorization, or other medical management requirements." FAQs, Part 44, pp. 2-3.

25. Federal guidance under the FFCRA and CARES Act is also clear that Defendants' obligation extends to a wide array of coverage and testing types. The FFCRA/CARES Act payment rules apply to "group health plans and health insurance issuers offering group or individual health insurance coverage (including grandfathered health plans)." This definition specifically includes "both insured and self-insured group health plans," including "private employment-based group health plans (ERISA plans), non-federal governmental plans . . . and church plans." *See* FAQs, Part 42, Q1 (April 11, 2020).

26. Defendants' reimbursement obligations also apply to all manner of COVID-19 diagnostic testing, including serological (otherwise known as "antibody") testing, and tests administered at home through self-collection. *See* FAQs, Part 42, Q1 (April 11, 2020); FAQs, Part 43, Q4 (June 23, 2020).

27. In short, there can be no debate that federal law requires Defendants to pay for COVID-19 testing services provided by Plaintiff. Regulators have even warned that plans and issuers shall not attempt to "limit or eliminate other benefits . . . to offset the costs of increasing the generosity of benefits related to the diagnosis and/or treatment of COVID-19." *See* FAQs, Part 42, Q9 (April 11, 2020).

28. Defendants' failure to pay and/or underpayment of COVID-19 testing claims is both a clear violation of those obligations and is the antithesis of what Congress mandated that health plans must do in the FFCRA and CARES Act.

29. In Kentucky, Defendants have a duty to acknowledge and promptly adjudicate claims, in addition to their duties to engage in good faith and fair dealing with regard to the relationships that exist between Defendants and Plaintiff. Defendants have breached these duties and Plaintiff has suffered damages.

## COUNT ONE

### (Breach of Contract)

30. Plaintiff repeats and realleges each of the allegations contained in this Complaint as if fully set forth herein.

31. The agreement between Plaintiff and Defendants for Plaintiff to provide laboratory services to Defendants subscribers/members constitutes a valid and binding contract between Plaintiff and Defendants (the "Contract").

32. Plaintiff has performed all its obligations under the Contract, including without limitation properly submitting claims to Defendants as required by the Contract, and has not breached any of the terms therein.

33. Pursuant to the Contract, Plaintiff was, among other things, entitled to have its claims for services rendered to Defendants' subscribers/members processed and paid promptly by Defendants.

34. Instead, Defendants repeatedly breached the Contract by either failing to respond at all to properly submitted claims or, for those claims in which Defendants did choose to

respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless.

35. Because of Defendants' myriad breaches of the Contract, Plaintiff has been deprived of millions of dollars to which it is contractually (and otherwise) entitled.

36. Defendants' failure to pay Plaintiff as required under the Contract (and applicable law) has caused damages to Plaintiff in an amount to be determined at trial.

## COUNT TWO

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

37. Plaintiff repeats and realleges each of the allegations contained in this Complaint as if fully set forth herein.

38. The Contract constitutes valid and binding contract between Plaintiff and Defendants.

39. Implied in all contracts is a covenant of good faith and fair dealing.

40. Defendants' actions here, including but not limited to, its failure and/or refusal to respond at all to properly submitted claims or, for those claims in which Defendants did choose to respond, regularly refusing to pay and/or underpaying claims submitted by Plaintiff for reasons that were (and remain) entirely groundless, breached this implied covenant.

41. This breach has caused Plaintiff damages in an amount to be determined at trial.

## COUNT THREE

### (Violation of the FFRCA and CARES Act)

42. Plaintiff repeats and realleges each of the allegations contained in this Complaint as if fully set forth herein.

43. Defendants offer group health plans and constitute a health insurance issuer offering group or individual health insurance coverage, as those terms are defined under section 6001 of the FFCRA.

44. The COVID-19 testing services that Plaintiff provided to Defendants' Subscribers and/or members constitute in vitro diagnostic products for the detection of COVID-19 or the diagnosis of the virus that causes COVID–19, as provided by section 6001 of the Families First Coronavirus Response Act.

45. Defendants, despite numerous and persistent demands and requests, have failed and refused to pay, and/or have underpaid, Plaintiff for providing its COVID-19 testing services.

46. Because of Defendants' refusal to abide by its payment obligations under the FFRCA and CARES Act, Plaintiff has been deprived of millions of dollars to which it is entitled.

47. Defendants' failure to pay Plaintiff as required under the FFRCA and CARES Act has caused damages to Plaintiff in an amount to be determined at the trial.

## COUNT FOUR

### (Fraudulent and Negligent Misrepresentation; Equitable and Promissory Estoppel)

48. Plaintiff repeats and realleges each of the allegations contained in this Complaint as if fully set forth herein.

34. Plaintiff relied upon the representations and course of conduct between Defendants and Plaintiff.

35. Plaintiff's reliance on Defendants' misrepresentations was reasonable and justified.

36. As a result, Defendants are precluded, both at law and in equity, from asserting rights which might have existed against Plaintiff because Plaintiff in good faith relied upon

Defendants' representations and the parties' course of dealing, and Plaintiff was induced to adversely change its position because Plaintiff provided testing services, including without limitation COVID-19 testing, to Defendants subscribers and/or members under the belief that it would be compensated by Defendants when it performed such services.

37. Moreover, Defendants are precluded, both at law and in equity, from asserting rights which might have existed against Plaintiff because Plaintiff in good faith relied upon and expected Defendants to comply with their payment obligations under the FFRCA and the CARES Act, and Plaintiff was induced to adversely change its position because Plaintiff provided COVID-19 testing services to Defendants' subscribers and/or members under the belief that it would be compensated by Defendants when it performed such services.

38. Defendants have demonstrated, over several years, that they do not intend to reimburse Plaintiff for providing testing services, including without limitation COVID-19 testing, for Defendants' subscribers and/or members in accordance with Defendants' own reimbursement standards and protocols and/or its obligations under the FFRCA and the CARES Act.

39. Defendants' practice of inducing Plaintiff to provide testing services to Defendants' subscribers and/or members, Defendants' refusal to pay for these services, and their improper practice of providing reimbursement for services at amounts far below those required by Defendants' own policies and protocols, is intentional, willful, and malicious.

40. Defendants have therefore fraudulently induced Plaintiff to perform testing services for Defendants' subscribers and/or members, for which Defendants have no intention to pay, and for which Defendants, in fact, did not pay, or paid at amounts far below those required by Defendants' own policies and protocols.

41. Thus, Defendants are also precluded from repudiating their payment and other contractual and statutory obligations because to do so would be violative of the demands of justice and good conscience, whether such failure arose by silence or omission where one has a duty to speak or act.

42. By failing to pay Plaintiff the usual, customary, and reasonable charges for its professional services, in accordance with Defendants' own reimbursement standards and protocols, Defendants breached both their obligation to reimburse Plaintiff for providing testing services for Defendants' subscribers and/or members, as well as their payment obligations under the FFRCA and the CARES Act.

43. As a result, Defendants are liable to Plaintiff for damages in an amount to be determined at the trial.

## COUNT FIVE

### (Unjust Enrichment)

44. Plaintiff repeats and realleges each of the allegations contained in this Complaint as if fully set forth herein.

45. In performing testing services for Defendants' subscribers and/or members, for which Defendants have no intention to pay, and for which Defendants, in fact, did not pay, or paid at amounts far below those required by Defendants' own policies and protocols, Plaintiff conferred a benefit upon Defendants' subscribers and/or members and, therefore, upon Defendants.

46. Moreover, in performing the COVID-19 testing services to Defendants' subscribers and/or members pursuant to the APP Agreements, as well as the FFRCA and the CARES Act, for which Defendants have no intention to pay, and for which Defendants, in fact, did not pay, or paid at amounts far below those required by Defendants' own policies and

protocols, Plaintiff conferred a benefit upon Defendants' subscribers and/or members and, therefore, upon Defendants.

47. Defendants have enriched themselves at Plaintiff's expense by failing and refusing to pay Plaintiff funds for having provided testing services to Defendants' subscribers and/or members, including without limitation COVID-19 testing under the FFRCA and the CARES Act, and instead using those funds for Defendants' own purposes.

48. It is against equity and good conscience to permit Defendants to retain the money it wrongfully failed to pay to Plaintiff.

49. Plaintiff is therefore entitled to recover all funds it is owed for providing testing services, including without limitation COVID-19 testing under the FFRCA and the CARES Act, that Defendants wrongfully failed to pay to Plaintiff.

## COUNT SIX

### (Violations of the Kentucky Consumer Protection Act and the Kentucky Unfair Claims Settlement Practices Act)

50. Plaintiff repeats and realleges each of the allegations contained in this Complaint as if fully set forth herein.

51. Plaintiff contracted with a Kentucky insurance company subject to liability under the Kentucky Consumer Protection Act ("KCPA"), KRS 360.170 *et seq.,* and the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), KRS 304.12-230 *et seq.*

52. The KCPA makes illegal "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce[.]" KRS 360.170(1). KRS 304.12-010 similarly proscribes any "unfair method of competition or any unfair or deceptive act or practice in the business of insurance", including but not limited to unfair claims settlement practices as outlined in the KUCSPA. The KUCSPA prohibits various different "acts or omissions"

including but not limited to: misrepresenting pertinent facts or policy provisions relating to coverage; failing to promptly acknowledge and respond to claims; failing to adopt and implement standards for prompt investigation of claims; refusing to pay claims without first conducting a reasonable investigation; failing to affirm or deny coverage within a reasonable period of time; and not attempting in good faith to reach a prompt, fair and equitable settlement of claims on which liability is reasonably clear. KRS 304.12-230.

53. As set forth at length above, Defendants acted, used, and employed unconscionable commercial practices, deception, false pretenses, false promises, misrepresentations, and the knowing, concealment, suppression, and/or omission of material facts with the intent that Plaintiff would rely on them, which is an unlawful practice under the KCPA and the KUCSPA. These include, but are not limited to, making the aforesaid misrepresentations to Plaintiff concerning payment for providing testing services to Defendants' subscribers and/or members, including without limitation COVID-19 testing under the FFRCA and the CARES Act, for which Defendants have no intention to pay, and for which Defendants, in fact, did not pay, or paid at amounts far below those required by Defendants' own policies and protocols and/or the FFRCA and the CARES Act.

54. Defendants wrongfully intended for Plaintiff to rely upon these untrue statements and omissions when providing testing services to Defendants' subscribers and/or members.

55. Plaintiff did reasonably rely on such statements when providing testing services to Defendants' subscribers and/or members.

56. Plaintiff suffered an ascertainable loss of moneys and was damaged because of Defendants' material misrepresentations and omissions, and unconscionable commercial practices, and continues to incur ascertainable damages.

**WHEREFORE**, Plaintiff Abira Medical Laboratories, LLC d/b/a Genesis Diagnostics, demands judgment of Defendants for the following relief:

a. Compensatory damages;

b. Liquidated damages;

c. Punitive damages;

d. Reasonable attorneys' fees, filing fees, and costs of litigation;

e. Interest; and

f. Such other and further reliefs as may be deemed just and equitable.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims.

This the 6th day of September, 2023.

/s/ Thomas N. Kerrick
Thomas N. Kerrick
Colton W. Givens
KERRICK BACHERT, PSC
2445 Nashville Road
Bowling Green, KY 42101
Phone: (270) 782-8160
Facsimile: (270) 782-5856
tkerrick@kerricklaw.com
cgivens@kerricklaw.com
*Counsel for Plaintiff*

Joseph B. Piorenzo
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, NJ 07102
*Motion for Pro Hac Vice Forthcoming*